IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 5291 |
| TRUDI MOMSEN, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| UNITED PARCEL SERVICE, INC., | ) ) | Magistrate Judge Schenkier |
| Defendant. | ) | |

**PLAINTIFF-INTERVENOR'S RESPONSE TO UPS'
MOTION TO DISMISS HER AMENDED INTERVENOR COMPLAINT**

Trudi Momsen, by her attorney, David Hemenway, responds to Defendant United Parcel Service's ("UPS") motion to dismiss her amended intervenor complaint as follows:

**Introduction**

UPS' motion to dismiss Momsen's amended intervenor complaint ("complaint") represents an unfortunate attempt to shoehorn the allegations in Momsen's complaint into a pre-fabricated, ill-fitting template designed (unsuccessfully) to attack EEOC's initial complaint. Thus, UPS repeatedly violates the most basis rule governing a Rule 12(b)(6) motion: a complaint must construed in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). Rather than address Momsen's actual complaint allegations, UPS repeatedly

mischaracterizes the complaint's allegations, ignores facts favorable to Momsen, construes inferences against Momsen, and constructs facts favorable to UPS out of thin air.

Momsen responds by first summarizing the amended complaint's real allegations and the inferences raised by the allegations, pointing out where UPS has distorted allegations, omitted key allegations, or otherwise construed inferences in its favor rather than in Momsen's favor. She then explains why she easily states a claim under the Americans With Disabilities Act, and specifically addresses UPS' contention that Seventh Circuit case law holds that Momsen is not a qualified person with a disability as a matter of law because she took a 12-month leave of absence related to her disability before returning to work in February 2007.

Momsen will only briefly recapitulate arguments already forcefully covered by the EEOC in responding to UPS' motion to dismiss EEOC's complaint. Momsen agrees that the EEOC complaint allegations, which are replicated but also expanded on in an individualized manner by Momsen, comprise a well-pleaded claim under the ADA. Accordingly, if the Court denies UPS' motion to dismiss EEOC's complaint, its motion directed at Momsen's amended complaint must also be denied. Both motions are based on the same, flawed premise that Momsen was not a qualified individual as a matter of law because she was fired pursuant to a blanket policy permitting terminations after 12 months of medical leave.

## Complaint Allegations

UPS has not credited the complaint's well-pleaded allegations and inferences therefrom as true, although it is required to do so at the motion to dismiss stage. *Barnes v. Briley*, 420 F.3d 63, 677 F.3d 673, 677 (7th Cir. 2005). Indeed, UPS' supporting memorandum contains two blatant distortions in its first paragraph. UPS asserts that "[I]ndeed, after 12 months of work, Momsen was still unable to return to her job and required additional leave of absence of an unspecified duration." (*UPS Memo. at p. 1*). First, the assertion that Momsen was "still unable to return after 12 months of work" is false. Momsen alleges she returned to work after an approximately 12 month leave of absence, and therefore alleges that she was *able* to work after 12 months. (Amd. Cmplt. at ¶¶ 10-11). Second, asserting that Momsen required leave of "unspecified duration" raises a false inference that UPS and Momsen discussed the length of any such leave. The reasonable inference drawn from the complaint is that UPS fired her before any discussions regarding the duration of any additional leave occurred. The amount of time off she may have needed for MS-related treatment was "unspecified" because UPS summarily fired her upon learning that she could not report to work because her MS had flared up. (*See* ¶¶ 16-17).

Similar distortions and omissions permeate the remainder of UPS' memorandum. The well-pleaded facts are as follows. Momsen began working for UPS in 1990, and worked for UPS for 17 years prior to being fired in March 2007. (¶ 17)[1]. Momsen developed multiple sclerosis, and began a leave of absence in or about February 2006. (¶ 10). She returned to work in February 2007. (¶11-12). UPS falsely states that she

---

[1] Momsen mistakenly alleged in ¶ 9 that she was terminated in March 2006, and also mistakenly described her position as in "payroll," when she was actually employed in the Human Resources Department. (¶ 9).

3

"attempted" to return to work. (¶ 11-12; *UPS Memo at p. 2*). Momsen required a cane to work when she returned. (¶ 12). She asked her supervisor for a handcart that would allow her to perform her job duties. (¶ 13). UPS does not acknowledge or address this allegation in its motion and memorandum. Momsen's supervisor laughed in response (¶ 14), an allegation also conspicuously omitted from UPS' motion and memorandum. UPS refused to provide her with any accommodations. (¶ 14). Momsen slipped and fell on the ice after she returned to work. (¶ 15). She also experienced a flare-up of her MS that may have been caused in part, or exacerbated by, UPS' refusal to grant her a reasonable accommodation, another allegation UPS ignores. (¶ 16). UPS fired her rather than consider her requests for reasonable accommodations, which include a request for time off for treatment related to her disability. (¶ 17).

Finally, UPS goes wholly outside the complaint's allegations and inserts its own conclusory assertion that "[s]ince Momsen only returned to work for two weeks before continuing her leave of absence, the 12 month clock did not reset but continued to run on the leave of absence she started in February 2006." (*UPS Memo. at p. 2*). This conclusory statement is not based on any allegations in the complaint, and requires drawing inferences against Momsen.

## Argument

### I. Momsen States a Claim Under Rule 8's Pleading Standards

Momsen's states ADA claims for both a discriminatory discharge and a failure to accommodate a disability. An ADA plaintiff states a claim for a discriminatory discharge by pleading sufficient facts showing (1) that she is disabled; (2) that she is otherwise qualified to perform the essential functions of the job with or without

4

reasonable accommodation; and (3) that the employer took an adverse job action against her because of her disability. *Stevens v. Ill. Dep't of Transportation*, 210F.3d 732, 736 (2000). A plaintiff states a claim for a failure to accommodate a disability by showing (1) she is a qualified individual with a disability, (2) the employer was aware of her disability, and, (3) the employer failed to reasonably accommodate the disability." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008). The showing a plaintiff must make at the pleading stage is simply to provide allegations suggesting that she has a right to relief that is plausible, i.e., above the speculative level. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

As described below, UPS' motion is predicated on its distorted characterization of the amended complaint's allegations. Indeed, by erecting a "straw" complaint, rather than addressing the actual complaint filed by Momsen, UPS has unwittingly demonstrated that Momsen's complaint states claims under the ADA.

### A. <u>Momsen Has Pleaded A Discriminatory Discharge Claim</u>

UPS' motion depends entirely on the court uncritically accepting its distorted characterization of the amended complaint's allegations, because its motion requires the court to find that Momsen was not a qualified person with a disability as a matter of law. Reduced to its essence, UPS' motion asserts that it did not have any obligation to even consider accommodating Momsen's MS after she returned to work because she had previously used 12 months of medical leave. UPS contends that Momsen's status as a person who had previously taken an extended medical leave placed her outside the ADA's protections as a matter of law under Seventh Circuit precedent. Thus, according

5

to UPS, it could summarily fire her without even considering whether an accommodation, like additional medical leave, could allow her to perform the essential functions of her position when she experienced symptoms of her disability after returning to work.

Momsen has adequately pleaded an ADA discriminatory discharge claim. It is undisputed that Momsen has MS, a disability, and that she was discharged. UPS asserts that Momsen is not a qualified person with a disability because she previously took a 12-month medical leave of absence. None of the cases cited by UPS support its contention that the Seventh Circuit has set forth a rule of law that disabled persons are not "qualified" individuals under the ADA because they have previously taken medical leave of a particular length. Instead, the Seventh Circuit recognizes that the ADA requires a flexible, fact-specific approach that asks whether the employee could show, at the time of her termination, that she was able to attend work reliably. *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924, 928 (7th Cir. 1998).

Momsen has pleaded facts consistent with an ability to attend work reliably with reasonable accommodation. Nothing in the amended complaint suggests that she needed significant time off when, after returning to work she injured herself while acclimating herself to walking with a cane in Winter, and experienced an MS flare-up. The reasonable inference to be drawn from the amended complaint is that UPS never made an effort to determine the length of additional time Momsen may have needed for therapeutic treatment. Discovery could reveal facts demonstrating that Momsen required only brief time off, and could have worked reliably. She had, after all, worked for UPS for 17 years prior to her MS diagnosis, a fact that suggests a certain level of

6

reliability. (¶ 9). The complaint also alleges by clear inference that UPS did not make an individualized inquiry into Momsen's disability and potential accommodations, including additional leave. (¶¶ 14, 17).

Momsen has also pleaded additional facts showing specific discriminatory animus. An ADA plaintiff can also prevail under a branch of the direct method of proof by presenting strong circumstantial evidence of discriminatory intent. *Timmons v. GMC*, 469 F.3d 1122, 1127 (7th Cir. 2006). Momsen's complaint contains allegations raising an inference of discriminatory intent. She alleges UPS refused to accommodate her requests for disabilities, including a simple handcart, and that her supervisor actually laughed at her when she asked for the cart. (¶ 14). The refusals to consider accommodations, her supervisor's hostile reaction, and UPS' decision to summarily fire her rather than even inquire about or consider possible time off are consistent with discriminatory intent.

## II. Momsen States a Claim for Failure to Reasonable Accommodate Her Disability

UPS' motion is also necessarily predicated on the false premise that Momsen's previous 12-month leave of absence absolved UPS from any obligation to accommodate her disability as a matter of law. UPS does not really dispute that Momsen has pleaded two of the three elements of a failure to accommodate claim. UPS does not deny that it was aware of Momsen's disability, and it must accept as true her allegations that it did not accommodate or even consider accommodating her requests for a handcart or time off for therapeutic treatment.

Thus, UPS is essentially asserting that although it knew Momsen was disabled, it had no obligation to even consider any accommodations because Momsen's previous

leave of absence means that, as a matter of law, she cannot show that she was a qualified individual with a disability, the initial component of a failure to accommodate claim. *Mobley v. Allstate Ins. Co.*, 531 F.3d at 546.

Momsen has discussed in Part I why she has adequately pleaded she was a qualified individual with a disability when she sought accommodations for her MS after returning to work. UPS asserts that the Seventh Circuit has set forth a rigid rule than an employer can terminate a disabled employee at some point between six weeks and two months of absence. *(UPS Memo. at p. 7)*. The cases cite by UPS reject the contention that an employer can simply wait until an arbitrary time period elapses, and then terminate a disabled employee without consequence. For example, UPS cites to *Waggoner v. Olin Corp.,* 169 F.3d 481 (7th Cir. 1999), a case that actually supports denial of its motion. In *Waggoner*, the Court specifically stated that it was "not establishing a hard and fast rule that no absences from work need be tolerated," and further acknowledged that it would "look to the reasonableness of a requested medical leave." *Id.* (citing *Haschmann v. Time Warner Enter. Co.*, 151 F.3d 591 (7th Cir. 1998)).

*Haschmann* is particularly instructive, as it involves a disability, lupus, which like MS, involves intermittent flare-ups. The Court in *Haschmann* noted that "'often the disabling aspect of a disability is, precisely, an intermittent manifestation of the disability, rather than the underlying impairment." *Id.* (*quoting Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995)). Thus, "'intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability that the employer must reasonably accommodate.'" *Id.* Accordingly, in *Haschmann*, the Court upheld a jury verdict in the

8

plaintiff's favor, holding that it was a question of fact as to whether the employer failed to accommodate the plaintiff's lupus by refusing her request for a second leave of absence to address the intermittent manifestations of her lupus.

*Haschmann*, *Olin*, and the other cases cited by UPS do set forth the unremarkable premise that an employer is not obligated to tolerate sporadic or unpredictable absences. However, the ADA is equally clear that an employer must engage in an interactive process with the employee to determine the appropriate accommodation under the circumstances. *Haschmann*, 151 F.3d at 160. As set forth in the amended complaint, UPS made absolutely no effort to engage in an interactive process with Momsen to determine appropriate accommodations for her disability after she returned to work. Instead, Momsen alleges her supervisor responded to her initial request for a minor accommodation by laughing, and that it summarily fired her rather than even consider some time off as an accommodation. These allegations, which must be taken as true, show a failure to accommodate.

Finally, the complaint allegations also show that UPS did not consider other accommodations that may have permitted Momsen to perform essential job functions. Accommodations under the ADA are, of course, not limited to time off from work, but can also include job restructuring or part-time or modified work schedules. 42 U.S.C. § 12111(9)(B).

Momsen has more than adequately pleaded that she could perform the essential functions of her position with reasonable accommodation, and that UPS actively refused to even discuss accommodations with her. She has pleaded a failure to accommodate claim.

**III. UPS' Motion to Dismiss Should Be Denied For the Reasons Stated by EEOC In its Motion**

Momsen has addressed UPS' motion to dismiss her amended complaint as it specifically relates to the allegations in her amended intervenor complaint that vary from the allegations in EEOC's complaint. More generally, however, Momsen's complaint should not be dismissed for the same reasons as those set forth in EEOC's response to UPS' motion to dismiss EEOC's complaint. Momsen's intervenor complaint contains the same allegations as EEOC's complaint, except for certain class-wide allegations. Momsen's intervenor complaint then sets forth additional facts specific to her employment and termination from UPS which further support her ADA claims. The additional allegations in the amended intervenor complaint are wholly consistent with the allegations in EEOC's complaint. Accordingly, if this Court denies UPS' motion to dismiss EEOC complaint, the law of the case will dictate denial of UPS' motion directed at Momsen's amended intervenor complaint.

## Conclusion

Wherefore, and for the reasons set forth in Plaintiff EEOC's Response to Defendant's Rule 12(b)(6) Motion to Dismiss, Intervenor-Plaintiff Trudi Momsen respectfully requests that the Court deny UPS' Motion to Dismiss Amended Intervenor Complaint, and for other relief as the Court deems proper.

Respectfully submitted,

Trudi Momsen, Plaintiff-Intervenor

By: /s/David Hemenway, her attorney

LAW OFFICE OF DAVID A. HEMENWAY, P.C.
300 S. Wacker Dr., Ste. 1700B
Chicago, IL 60606
(312) 663-4733
employmentlaw@mac.com