IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | No. 09 C 5291 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | FIRST AMENDED **C O M P L A I N T** |
| United Parcel Service, Inc., | ) ) ) | Judge Robert Dow, Jr. Magistrate Judge Schenkier |
| Defendant | ) ) ) | **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices. The Equal Employment Opportunity Commission ("EEOC") alleges that United Parcel Service, Inc. ("UPS") terminated the employment of Trudi Momsen because of her disability rather than accommodating her by extending her leave, and, further, discriminated against a class of qualified individuals with disabilities (including but not limited to Trudi Momsen) by maintaining an inflexible 12-month leave policy which did not provide for reasonable accommodation and which instead provided for termination of employment, all in violation of the ADA.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706 and Section 707 of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e-5, and § 20000e-6.

2.  The employment practices alleged to be unlawful were committed within the State of Illinois and elsewhere where UPS does business in the United States.

## PARTIES

3.  Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3), 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times, UPS was doing business in the State of Illinois and had at least 15 employees.

5.  At all relevant times, UPS was an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.  At all relevant times, UPS was a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.  More than thirty days prior to the institution of this lawsuit, Trudi Momsen filed a Charge of Discrimination with the EEOC alleging violations of Title I of the ADA by UPS. All conditions precedent to the institution of this lawsuit have been fulfilled.

8.  Since at least 2002, UPS has maintained an inflexible 12-month leave policy which does not provide for reasonable accommodation of qualified individuals with disabilities and which instead provides for termination of their employment, in violation of Sections 102(a)

and102(b)(3)(A) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(5)(A).

9. Each class member is a qualified individual with a disability who could perform the essential duties of his or her job with or without a reasonable accommodation.

10. For example, Charging Party Trudi Momsen is a qualified individual with a disability who could perform the essential functions of her job with or without an accommodation. Momsen began working for UPS in 1990 as a customer service representative, and worked for UPS for 17 years prior to being to being fired in March 2006. Her position at the time of the events described in this amended complaint was as an administrative assistant in UPS' payroll department.

11. Momsen took a medical leave of absence from in or about February 2006 to February 2007 for reasons related to her disability, multiple sclerosis (MS).

12. In February 2007, Momsen returned from her leave of absence.

13. When Momsen returned to work in February 2007, she required a cane to walk in order to maintain her balance.

14. When Momsen returned from her leave of absence, she requested reasonable accommodations from UPS, including, but not limited to, a hand cart that would allow her to perform her job duties.

15. When Momsen requested a hand cart, her supervisor laughed in response, and UPS refused to provide her with this or any other accommodation for her disability.

16. After returning to work, Momsen injured herself when she slipped on the ice while walking to her car, off of UPS premises and outside of her working hours.

17. After returning to work, Momsen also experienced a flareup of her MS, and required

therapeutic treatment that required her to take time off to receive this treatment. Momsen's flareup may have resulted, in part, or have been exacerbated by, stress caused by UPS' failure to grant her request for accommodations for her disability.

18. UPS fired Momsen on or about March 6, 2007, rather than accommodate her request for time off resulting from her disability-caused injury and need for therapeutic treatment.

19. UPS fired Momsen, pursuant to its policy described in paragraph 8, rather than accommodate her by extending her leave, by offering her other reasonable accommodations, or by returning her to work in an available position which she could have performed, in violation of Sections 102(a) and102(b)(3)(A) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(5)(A).

20. Another class member, Mavis Luvert, is also a qualified individual with a disability who could perform the essential functions of her job with or without an accommodation. Luvert began working at UPS in 1990 as a loader/unloader.

21. Luvert has been diagnosed with emphysema and frequently has difficulty breathing. She gets short of breath when talking and exercising, particularly when the temperature is high.

22. In or about July 2006, Luvert was transferred to a different area within the same UPS facility. This new area was warmer and had limited ventilation.

23. Luvert presented UPS with a doctor's note restricting her work to well-ventilated areas. Luvert requested the reasonable accommodation of being allowed to return to her original area, where the ventilation was better, performing the same job.

24. In response to this request, UPS placed her on a disability leave of absence and then fired her on or about July 17, 2007.

25. If UPS had provided a fan as a reasonable accommodation for Luvert to use in her

station, she could have remained in her new location, or, UPS could have accommodated her by returning her to her original work area, but UPS never had any discussions with Luvert concerning possible accommodations.

26. UPS fired Luvert on or about July 17, 2007, pursuant to its policy described in paragraph 8, rather than accommodate her by offering her other reasonable accommodations, such as the use of a fan, or by returning her to work in her original work location, in violation of Sections 102(a) and102(b)(3)(A) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(5)(A).

27. Similar to Momsen and Luvert, each class member is a qualified individual with a disability who could perform the essential functions of his or her job with or without a reasonable accommodation. Because disabilities, and the reasonable accommodations appropriate for particular individuals with disabilities, may vary significantly, the reasonable accommodations which UPS should have made available to class members to permit them to perform the essential functions of their jobs (with or without a reasonable accommodation), would not have all been the same. The reasonable accommodations would have varied from class member to class member on an individual basis, as determined through an interactive process between UPS and the individual class members. However, rather than engage in that interactive process and reasonably accommodate these class members, without undue hardship to itself, UPS terminated the class members' employment, pursuant to its policy described in paragraph 8.

28. The unlawful employment practices complained of in paragraphs 8-27 above were intentional.

29. The unlawful employment practices complained of in paragraphs 8-27 above were done with malice or with reckless indifference to the federally protected rights of Trudi Momsen,

5

Mavis Luvert, and a class of qualified individuals with disabilities

30. The effect of the practices complained of in paragraphs 8-27 above has been to deprive Trudi Momsen, Mavis Luvert, and a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as employees because of their disabilities.

31. The unlawful employment practices complained of in paragraphs 8-27 above were intentional.

32. The unlawful employment practices complained of in paragraphs 8-27 above were done with malice or with reckless indifference to the federally protected rights of a class of qualified individuals with disabilities.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining UPS, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in employment practices which discriminate on the basis of disability;

B. Order UPS to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of the unlawful employment practices of UPS;

C. Order Defendant to make whole Trudi Momsen and a class of qualified individuals with disabilities by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D. Order Defendant to make whole Trudi Momsen and a class of qualified

individuals with disabilities by providing compensation for past and future pecuniary losses resulting from their unlawful termination, including, but not limited to, job search expenses;

  E. Order UPS to make whole Trudi Momsen and a class of qualified individuals with disabilities by providing compensation for nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 8-27 above, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  F. Order UPS to pay Trudi Momsen and a class of qualified individuals with disabilities punitive damages for its malicious and reckless conduct, as described in paragraphs 8-27 above, in an amount to be determined at trial;

  G. Grant such further relief as the Court deems necessary and proper in the public interest; and

  H. Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

>JAMES LEE
>Acting General Counsel
>
>GWENDOLYN YOUNG REAMS
>Associate General Counsel
>
>EQUAL EMPLOYMENT OPPORTUNITY
>COMMISSION
>1801 "L" Street, N.W.
>Washington, D.C. 20507
>
>/s/ John C. Hendrickson
>John C. Hendrickson
>Regional Attorney
>
>/s/ Diane I. Smason
>Diane I. Smason
>Supervisory Trial Attorney
>
>/s/ Jeanne B. Szromba
>Jeanne B. Szromba
>Trial Attorney
>EQUAL EMPLOYMENT OPPORTUNITY
>COMMISSION
>500 West Madison Street, Suite 2000
>Chicago, Illinois 60661
>312-353-7546
>jeanne.szromba@eeoc.gov