IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| Plaintiff, | ) ) | No. 09 C 5291 |
| TRUDI MOMSEN, | ) | Judge Robert M. Dow, Jr. |
| Plaintiff-Intervenor | ) ) | Magistrate Judge Schenkier |
| v. | ) ) | |
| UNITED PARCEL SERVICE, INC., Defendant. | ) ) ) | |

**Plaintiff EEOC's Reply in Support of EEOC's Motion for Leave to File Second Amended Complaint and in Support of Second Amended Complaint**

EEOC brought suit against Defendant UPS under Section 12112(b)(5) of the Americans With Disabilities Act ("ADA") to challenge UPS's inflexible policy of automatically terminating employees following 12 months of leave without considering whether a reasonable accommodation would permit a qualified individual with a disability to return to work. On September 28, 2011, this Court dismissed EEOC's claim for relief for unidentified qualified individuals with a disability. But the Court gave EEOC an opportunity to amend its Complaint, and EEOC did so, filing EEOC's Second Amended Complaint, which is now at issue. UPS opposes EEOC's request for leave and offers detailed arguments as to why the Second Amended Complaint would be dismissed if EEOC were permitted to file it. Therefore, following UPS's lead and to avoid repetitive briefing, EEOC argues in this reply both that leave to file should be granted and that it would not be futile because EEOC's Second Amended Complaint should not be dismissed.

EEOC's Second Amended Complaint does not add new facts about any particular unidentified victim. It does add Section 12112(b)(6) of the ADA, which prohibits employers from relying upon any "qualification standard, employment test or other selection criteria" that tends to screen out qualified individuals with a disability. Because UPS's application of its leave policy acts as a health requirement (effectively, a 100% healed requirement for employees who have been on leave) that limits the ability of qualified individuals with a disability to return to work, it acts as just such a "qualification standard" prohibited by §12112(b)(6).

The facts that support EEOC's § 12112(b)(6) claim are the same as the facts that support EEOC's § 12112(b)(5) claim, and no discovery has yet been conducted. Thus, UPS has suffered no prejudice as a result of EEOC's addition of § 12112(b)(6). EEOC's reliance on § 12112(b)(6) is intended to clarify that in this action EEOC seeks relief only for qualified individuals with a disability who will be identified via discovery and who were victims of *a common violation*: termination by UPS pursuant to its inflexible application of the same blanket 12-month leave policy.

EEOC's Complaint describes the Company's inflexible leave policy (which mandated administrative termination after 12 months of leave and did not provide for consideration of other reasonable accommodations); identifies two victims of the practice and describes their disabilities; and details the failure of UPS to reasonably accommodate them and its decision to terminate them under the policy. By alleging facts sufficient to prove the existence of an inflexible leave policy and that the two identified claimants were qualified individuals with disabilities who could have returned to work if UPS had provided reasonable accommodations, the EEOC's Complaint shows that the inflexible application of the 12-month leave policy unlawfully affected two specific disabled individuals at one UPS facility. These facts make it

2

"plausible" – the standard which all pleadings must satisfy -- that when UPS applied this policy nationwide, it illegally discriminated against other disabled individuals as well. The number of individuals who may be entitled to relief if the EEOC proves its claim is a separate question: Multiple claimants are not equivalent to multiple claims.

This EEOC enforcement case is not merely a substitute for private litigation that the claimants could bring regarding individual employment decisions. This also is not a case about whether 12 months of leave is itself a sufficient reasonable accommodation. By offering employees 12 months of leave, UPS has already decided that such a period of leave is not an undue hardship. This case is a federal government challenge to UPS's nationwide inflexible application of its leave policy to qualified individuals with disabilities. The EEOC is the only plaintiff; the Company's inflexible application of a 12-month leave policy and failure to consider other reasonable accommodations is the common issue; and EEOC's Complaint contains sufficient detail to put UPS on notice of EEOC's claim and to make it plausible.

## LEGAL ARGUMENT

**I.      The Facts Alleged Show that UPS's Leave Policy Operated as a Qualification Standard That Can Be Challenged Under 12112(b)(6)**

UPS again tries to mislead this Court by claiming that this case is about the length of its leave policy. But this case is not about whether 12 months of leave is a reasonable accommodation. UPS made the business decision to offer a leave of this length. Thus, UPS has already determined that such a period of leave is not an undue hardship. What is at issue is the application UPS's practice of offering 12 months of leave and then terminating qualified individuals with a disability rather than providing them with any other reasonable accommodations, as required by the ADA.

Discrimination under the ADA includes the use of "*qualification standards,* employment tests or other selection criteria that screen out or *tend to screen out* an individual with a disability or a *class of individuals with disabilities* unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6) (emphasis added). The EEOC regulations define "qualifications standards" as "the personal and professional attributes including the skill, experience, education, physical, *medical*, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." 29 C.F.R. § 1630.2(q) (emphasis added).

UPS's application of its 12-month leave fits within the rubric of the ADA and EEOC regulations: As alleged in EEOC's Complaint, in order for UPS employees to return to work from their medical leave, they had to meet a standard of fitness which required them to work without an additional accommodation, in violation of the ADA. For instance, EEOC alleges that at the expiration of Momsen's 12-month leave, she required the accommodation of additional leave to be able to perform the physical requirements of her job. Consequently, UPS's application of its leave policy acted as a medical standard of fitness for Momsen that she was unable to meet without an additional accommodation. The Second Amended Complaint merely alleges that UPS applied a comparable medical standard of fitness for all employees returning from this leave which resulted in the screening out of a class of individuals with disabilities.

EEOC does not dispute that all of the cases cited in UPS's survey of §12112(b)(6) decisions involve tests of an employee's "physical acumen." *See* Def. Mem., p. 5, n. 1. However, none of these cases limits the application of §12112(b)(6) only to issues of physical acumen; nor are the ADA or EEOC regulations so narrowly tailored. EEOC has alleged facts

4

that show that it was UPS's practice to offer only 12 months of leave and then to terminate qualified individuals with a disability, rather than providing them with other reasonable accommodations, which created a medical standard of fitness for UPS employees seeking to return from the Company's 12-month leave. Accordingly, EEOC's §12112(b)(6) claim falls within the conduct prohibited by the statute.

## II.     Plaintiff EEOC Did Not Unduly Delay In Adding Section 12112(b)(6) Nor Did Defendant Suffer Any Prejudice

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Such leave should be denied only if there has been undue delay, dilatory motive on the part of the plaintiff, failure to cure previous deficiencies, undue prejudice, or where the amendment would be futile. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (internal citations omitted). None of those apply here, and as discussed in greater detail in Section III, below, the amendment would not be futile.

Defendant argues that EEOC's leave to amend should be denied because of EEOC's "undue delay" in alleging a violation under §12112(b)(6). Delay alone generally is not sufficient to defeat a motion for leave to amend *unless* the opposing party can show that there is undue prejudice resulting from the delay or if the pleading is futile. *See Campania Management Co., Inc., v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002); *Textor v. Bd. of Regents of Univ. of N. Illinois Univ.*, 711 F.2d 1387, 1391 (7th Cir. 1983). Defendant has failed to articulate *any* prejudice – because there is none – that it will suffer because of EEOC's addition of this claim.

The §12112(b)(6) claim is factually identical to EEOC's §12112(b)(5) claim, and no additional discovery will be required. Further, no discovery in the case has yet been conducted. As a result, Defendant will suffer no prejudice by EEOC adding this violation now. Nor has EEOC has unduly delayed in adding this violation. As discussed above, EEOC seeks to amend

5

the Complaint to add §12112(b)(6) to clarify its claim that UPS's application of its *policy* violated the ADA. Had this Court denied either of Defendant's motions to dismiss, EEOC would have no need to clarify its position.

Contrary to Defendant's assertion, it would be unremarkable for the Court to grant EEOC leave to amend, even two years after the filing of the original complaint. *Clark v. Underwriters Management Corp.*, 2003 WL 21148420, * 11-12 (N.D.Ill. 2003) (court granted plaintiff's motion to amend his answer to the defendant's counterclaim after more than two years past the close of discovery and over three years after the plaintiff filed his original answer to the counterclaim); *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2001 WL 526676 at * 4–5 (N.D.Ill. 2001) (court granted the plaintiff leave to amend its complaint two years after it had been filed because the "the facts supporting the proposed amendment overlapped with those supporting its existing claim"); *BPI Energy Holdings, Inc. v. IEC, LLC*, 2009 WL 1140010, *2 (S.D.Ill. 2009) (court granted leave to file fourth amended complaint despite the fact that the case was pending for two years, in part because the case had been stayed for approximately six months and the general factual allegations underlying the claims had not changed over time).[1] As such, EEOC did not unduly delay in adding §12112(b)(6) nor will UPS suffer any prejudice as a result of the amendment.

---

[1] There is no basis for UPS's claim that *Crenshaw v. Antokol*, 206 Fed.Appx. 560, 563 (7th Cir. 2006), is "identical" to this case. In *Crenshaw*, the plaintiff-appellant (who was also an attorney representing herself) filed an "unintelligible" second amended complaint alleging, among other things, that several of the litigants, attorneys and judges in the underlying case conspired against her to deprive her of fair use of the judicial system on account of her race. The district court deemed the complaint inadequate under Rule 8 because it was "replete with confusing language, redundancies and irrelevant material." The Seventh Circuit held that the plaintiff-appellant abused the judicial system and sanctioned her for making a frivolous appeal. *Id*. at 564-65. UPS cannot claim that the deficiencies in *Crenshaw*'s second amended complaint apply here. The only similarity that this case has with *Crenshaw* is that the plaintiff-appellant sought leave to file a second amended complaint approximately two years after filing the original complaint.

**III.  EEOC's Motion Should Be Granted and the Case Should Proceed Because EEOC's Claim Under Sections 12112(b)(5) and (b)(6) of the ADA on Behalf of Unidentified Victims Satisfies the Pleading Standard of *Twombly* and *Iqbal***

EEOC's proposed Second Amended Complaint as to unidentified victims of the same practice "giv[es] enough details about the subject matter of the case to present a story that holds together," which is the governing post-*Iqbal* standard in discrimination cases in the Seventh Circuit. *See Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). The sufficiency of EEOC's pleading should be evaluated in light of the fact that EEOC is a federal law enforcement agency that does not stand in the shoes of the individual employees on whose behalf the EEOC has brought suit. While EEOC's claims (like those of all plaintiffs) must satisfy Fed. R. Civ. P. 8, requiring EEOC to identify each affected class member at the time that the agency files suit ignores that "EEOC has independent standing to sue in its own name, and its authority to seek victim-specific remedies for private individuals is not derivative of the rights of those individuals." *EEOC v. 5042 Holdings Ltd.*, 2010 WL 148085, *1 (N.D. W. Va., Jan. 11, 2010) (post-*Iqbal* decision denying defendant's Rule 12(e) Motion for a More Definite Statement of Claims, which sought to require EEOC to identify all sex harassment class members). Under Fed. R. Civ. P. 8, a court must consider whether EEOC has provided adequate notice of EEOC's claim – not whether EEOC has sufficiently described each affected claimant.

   **A.  EEOC's Complaint Alleges Sufficient Facts to "Make it Plausible" that EEOC is Entitled to Relief for a Class of Unidentified Qualified Individuals With a Disability Terminated Pursuant to UPS's Application of the Company's Leave Policy.**

Describing the pleading standard under Fed. R. Civ. 8, the Supreme Court, in two recent decisions, *Twombly* and *Iqbal*, has said that it is the pleader's responsibility "to state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) ("A claim has facial plausibility when the plaintiff

7

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")   After these decisions, the Seventh Circuit reaffirmed that Fed. R. Civ. P. 8 requires *only* a "short and plain statement of the claim showing that the pleader is entitled to relief" and emphasized that "none of the recent decisions cast doubt on the validity of Rule 8." *Id*. at 403-04.   Notice pleading is still all that is required. *Tomayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2007).  "A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief."   *Id.*  "Pursuant to Rule 8, pleading is meant to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Bausch v. Stryker Corp.,* 630 F.3d 546, 559 (7th Cir. 2010) (internal quotations and citations omitted); s*ee also Homeyer v. Stanley Tulchin Asocs., Inc.,* 91 F.3d 959, 962 (7th Cir.1996) (holding that an ADA "disability" is "a fact-based inquiry and [the] determination is not generally motion to dismiss territory").

      The allegations of EEOC's Complaint state a plausible claim that UPS violated the ADA with regard to unidentified qualified individuals with a disability.   EEOC alleged that UPS maintained a practice of affording employees eligible for leave only an inflexible 12-month leave and failing to accommodate qualified individuals with disabilities, and that this policy operated to screen out qualified individuals with disabilities.  EEOC then identified two individual employees who were terminated pursuant to the leave policy and described in detail their disabilities and how they might have been accommodated.  This creates a plausible basis for believing that other employees on leave who are qualified individuals with a disability were similarly affected *by the Company's application of the same policy*.  Nothing in the plausibility standard requires that EEOC identify each victim by name or specifically describe his or her

8

disability and failure to be accommodated. Indeed, there are *no* post-*Twombly-Iqbal* cases that require an ADA plaintiff alleging a common violation to state a *prima facie* case for each class member in order to survive a motion to dismiss.

EEOC also indicated that the agency would seek relief only for other qualified individuals with a disability who were terminated pursuant to the application of the same policy during a specified period of time. While EEOC does not yet know the identities of all of the disabled employees who were affected by UPS's leave policy, EEOC has identified a specific policy that was applied in violation of the ADA and the universe of those employees who were affected by the policy: all those fired by UPS after taking 52 weeks of medical leave during the relevant time period. EEOC's Complaint thus puts UPS on notice of EEOC's claim. EEOC has given "enough details about the subject matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404.

### B. EEOC Alleges a Common Claim Under Sections 12112(b)(5) and (b)(6) of the ADA.

#### 1. EEOC's Claim

EEOC's *claim* under Sections 12112(b)(5) and (b)(6) of the ADA is not the same as that of EEOC's *claimants*. *See General Telephone Co. of Northwest, Inc. v. EEOC,* 446 U.S. 318, 326 (1980). In numerous circumstances, courts have recognized that EEOC's claim differs from that of the agency's claimants. *See, e.g., Waffle House*, 534 U.S. 279, 296 (2002) (EEOC can proceed with litigation though the victim is precluded from doing so by a binding mandatory arbitration agreement); *EEOC v. Watkins Motor Lines, Inc*., 553 F.3d 593, 598 (7th Cir. 2009) (EEOC can continue an investigation over the objection of the charging party); *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 696 (7th Cir. 2006) (EEOC can seek monetary relief for victims even if the victims are barred from bringing their own suit because they failed to file timely an

9

administrative charge); *EEOC v. Continental Airlines Inc.*, No. 04 C 3055, 2006 WL 3505485, at *1 (N.D. Ill. Dec. 4, 2006) (EEOC can also seek victim-specific monetary relief at trial despite a victim's private settlement with the employer).

EEOC possesses broad statutory authority to expand the scope of its litigation to encompass classes/groups of victims and claims not identified in the administrative charge precipitating the EEOC's lawsuit, and the EEOC may do so *without* satisfying Rule 23 class certification requirements. *See, e.g. General Telephone,* 446 U.S. at 324-25. The assertion that EEOC's role in ADA cases is somehow different from its role in Title VII cases due to the individualized nature of ADA claims is not unlike the challenges made to the EEOC's role in Title VII cases (particularly harassment cases) following passage of the Civil Rights Act of 1991 which made compensatory and punitive damages available. In *In re Bemis*, 279 F.3d 419 (7th Cir. 2002), the employer argued that the individualized nature of harassment claims, particularly after the inclusion of emotional and punitive damages, made the EEOC's class claim too varied and disparate for treatment as one claim. But the Seventh Circuit rejected this argument:

> The distinctions that Bemis urges are threadbare: *General Telephone* did not involve harassment, the EEOC here is not alleging an intentional company-wide pattern or practice of discrimination, and it is seeking compensatory and punitive damages rather than merely injunctive relief and back pay as in *General Telephone* (which was decided before common-law-type damages could be awarded in Title VII suits). We do not begin to see what these differences have to do with the reasoning of *General Telephone* . . . It is of course possible that this case is less *appropriate* for class treatment – maybe as Bemis argues there is a huge variance in the nature and extent of the injuries suffered by the members of the class. But the Court did not hold in *General Telephone* that the case before it met the standards of Rule 23. The whole point was that the EEOC doesn't *have* to meet those standards, a holding that embraces this case as well.

*Id*. at 421. Thus, it would be inconsistent with the Seventh Circuit's holding in *Bemis* to conclude that the arguably more individualized nature of ADA claims transforms the EEOC's otherwise unitary claim into multiple claims - one for each claimant, and places the EEOC in the

10

shoes of each claimant and requires separate individualized pleading for each person's claim. *See also*, *Waffle House*, 534 U.S. at 281 (Court recognizing that the EEOC does not stand in the employee's shoes).

EEOC's unique position in employment litigation does not excuse the agency from following the pleading requirements of Rule 8; rather, it informs the kind of claim EEOC brings. Any concern about the highly individualized nature of claims and defenses inherent in ADA litigation is misplaced here. EEOC has alleged a *common claim* in this case: namely, that UPS violated the ADA by inflexibly applying a 12-month leave policy to qualified individuals with a disability and imposing a standard of fitness that precluded employees on leave from returning to work. It is the plausibility of that claim that should form the basis for analyzing the sufficiency of EEOC's Complaint.

> 2. **Post-*Twobly-Iqbal* Case Law Confirms that EEOC Is Not Required to Identify Every Victim of a Common Violation at the Pleading Stage**

While the ADA is unique among the federal employment discrimination laws in limiting its protections to "qualified" individuals, it is not unique in requiring an employee to provide individualized evidence to state a claim for relief. Harassment cases in fact provide an apt analogy: in a harassment case, as an element of the *prima facie* case, each victim must individually demonstrate that he or she endured subjectively offensive severe or pervasive conduct. *See, e.g., Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). Harassment cases – like ADA cases – require individualized proof to establish harm. Yet, courts considering EEOC's ability post-*Iqbal* to pursue relief for unidentified harassment victims on a motion to dismiss have <u>not</u> required EEOC to identify and provide supporting facts for each such victim in the agency's complaint in the action. In *5042 Holdings Ltd.*, the court denied an employer's Fed. R. Civ. P. 12 (e) motion for more definite statement and held that *naming each EEOC class*

11

*member in the complaint is not required by Rule 8. See* 2010 WL 148085, at *2. "Discovery under the Federal Rules of Civil Procedure is a sufficient procedure for disclosure of identities of EEOC class members in [this sex harassment class] case." *Id.* (emphasis added); *See also EEOC v. Nichols Gas & Oil, Inc.,* 2006 WL 692345, *1, *2 (W.D.N.Y. Mar. 13, 2006) (same); *EEOC v. Custom Companies, Inc.*, No. 02 C 3768, 2003 WL 22455510, at *2 (N.D. Ill. Oct. 23, 2003) (rejecting defendant's argument that only persons identified in EEOC complaint are aggrieved persons who may intervene in EEOC action).

Further, each of the federal employment discrimination statutes require that an employee claiming failure to hire must demonstrate that he or she is qualified for the position at issue. But courts have not required EEOC to identify individually in the pleadings each victim of the discriminatory hiring process in a class failure to hire case. *See EEOC v. Propak Logistics,* 2010 WL 3081339 (W.D.N.C. 2010) (Post-*Iqbal* national origin failure to hire case) (holding that EEOC's allegations that defendant has a pattern or practice of discriminatory hiring by "predominantly hiring Hispanic applicants to fill vacant available positions to the exclusion of similarly or more qualified non-Hispanic applicants" was sufficient to survive a motion to dismiss and imposing no requirement that EEOC identify all victims); *EEOC v. Scrub,* 2009 WL 3458530, *2 (N.D. Ill. 2009) (post-*Iqbal* race failure to hire case) (holding that EEOC's allegations that defendant engaged in a pattern or practice of failing to recruit or hire African-Americans because of their race and national origin was sufficient to survive a motion to dismiss and imposing no requirement that EEOC identify all victims); *EEOC v. Man Mar, Inc.,* 2009 WL 3462217, *1,*2 & n. 1 (S.D.Fla. Oct. 22, 2009) (post-*Iqbal* ADEA case) (holding Defendant should seek EEOC class member identities in discovery rather than through Rule 12(e) motion).[2]

---

[2] EEOC's claim of a policy violation here is also akin to an FLSA collective action, which has been permitted to go forward post-*Iqbal* without the identification of each individual class member. *See Perrin v. Papa John's Intern,*

12

These cases are consistent with the numerous cases that held pre-*Iqbal* that EEOC is not required to identify in its complaint all the victims on whose behalf the agency is seeking relief. *See, e.g., EEOC v. General Tel. Co. of the Northwest, Inc.*, 599 F.2d 322, 328 & n.10 (9th Cir. 1979) (citing Title VII legislative history for the principle that "it is not necessary that each individual entitled to relief be named in the original charge *or in the claim for relief"*) (emphasis added), *aff'd*, 446 U.S. 318 (1980); *EEOC v. St. Louis-San Francisco Rwy. Co.*, 743 F.2d 739, 743-44 (10th Cir. 1984) (citing Supreme Court decision in *General Telephone* and reversing district court refusal to permit discovery to identify class of aggrieved persons that was based in part on EEOC not identifying victims in its complaint beyond charging party).

Although EEOC has not specifically pled a pattern or practice claim here, EEOC's allegations in this case can be analogized to the government's claims in *Davoll v. Webb,* 194 F.3d 1116, 1147-48 (10th Cir. 1999), an ADA pattern or practice case brought both by the government and by private plaintiffs. In *Davoll*, the Tenth Circuit held that the government properly won summary judgment on the liability phase of its pattern or practice claim that the employer violated the ADA by refusing to reassign disabled police officers to other open positions though the government *had not individually identified each victim* of the policy and demonstrated that he or she was a qualified individual with a disability. *Id*. The Tenth Circuit affirmed the district court's decision that qualified individuals with a disability could be identified in a subsequent phase of the proceeding. The logic of the Tenth Circuit's opinion compels the conclusion that the government is not required to identify in its complaint all the

---

*Inc.*, 2011 WL 846148, *5 (E.D.Mo. March 8, 2011) (holding that it was not necessary for the plaintiff to individually identify other delivery drivers with similar experiences to the plaintiff) ("[T]he Court does not find it implausible that the putative plaintiffs could have had similar experiences to Plaintiff. Plaintiff has alleged that they were all employed as delivery drivers with Defendant and they were all subject to similar driving conditions, incurred similar automobile expenses, and experienced similar delivery distances and frequencies" and were subject to the same reimbursement policy that the plaintiff was challenging.)

13

victims of a common policy that violates the ADA as applied. The court distinguished the government from private plaintiffs who are subject to Rule 23 and were not permitted to proceed with an ADA class action for the same violation. *Id*.

Rather than considering whether each individual claimant must allege specific facts that he/she is a "qualified individual under the ADA who could have performed his or her job without a reasonable accommodation," as this Court did here, the appropriate question is whether the EEOC pled sufficient facts regarding its claim to "present a story that holds together," i.e., that UPS violated the ADA by inflexibly applying its 12-month leave policy and failing to provide employees on leave with other accommodations. The weight of judicial authority that recognizes the EEOC's unique enforcement role supports the conclusion that EEOC is not required to identify each victim of an employer's unlawful practice or application of a policy in order to challenge that practice or policy.

## CONCLUSION

In EEOC's Second Amended Complaint, EEOC pled facts alleging that:

- UPS maintained a 12-month maximum leave policy:
- UPS engaged in a common practice of inflexibly applying its 12-month leave policy to deny employees on leave other accommodations; and
- UPS applied its policy to terminate two identified qualified individuals with a disability.

These facts provide a sufficient basis to make it plausible to believe that other qualified individuals with a disability were similarly affected in violation of Sections 12112(b)(5) and (b)(6). EEOC therefore respectfully requests that this court grant EEOC leave to file EEOC's Second Amended Complaint and permit EEOC to seek relief for unidentified claimants.

14

Dated: December 16, 2011　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Deborah Hamilton
　　　　　　　　　　　　　　　　　　　Deborah Hamilton
　　　　　　　　　　　　　　　　　　　Jeanne Szromba
　　　　　　　　　　　　　　　　　　　Aaron DeCamp
　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　Equal Employment Opportunity Commission
　　　　　　　　　　　　　　　　　　　500 West Madison Street, Suite 2000
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60661