**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| TRUDI MOMSEN, | ) ) | Case No. 09-cv-5291 |
| Plaintiff-Intervenor, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| UNITED PARCEL SERVICE, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Equal Opportunity Employment Commission ("EEOC"), pursuant to 28 U.S.C. § 1292(b), has asked the Court to certify for appeal the question "Whether Fed. R. Civ. P. 8 requires the EEOC, when seeking relief on behalf of unidentified qualified individuals with a disability, to plead facts specific to each individual demonstrating that each such individual is a qualified individual with a disability." [72]. At the last status hearing, the Court advised the parties that, in addition to taking this request under advisement, it would also on its own motion reconsider its decisions granting Defendant United Parcel Service's ("UPS") motion to dismiss [57] and denying EEOC's motion for leave to file a second amended complaint [71]. See Fed. R. Civ. P. 54(b). Having now undertaken a thorough reanalysis of the case law, the Court concludes that reconsideration of those orders is warranted. The Court therefore withdraws its earlier rulings on the motion to dismiss [57] and motion for leave to file a second amended complaint [71], and for the reasons stated below denies UPS's motion to dismiss [48] and grants EEOC's motion for leave to file a second amended complaint [59]. EEOC's motion for a certificate of

1

appealability [72] and UPS's motion for leave to file a surreply [78] are denied as moot. UPS is directed to answer or otherwise respond to the second amended complaint within 21 days of the date of this order.

I.     **Background**

EEOC filed a complaint on behalf of former UPS employee Trudi Momsen and other unidentified class[1] members, alleging that UPS violated sections 102(b)(3)(A) and 102(b)(5)(A) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(b)(3)(A), (b)(5)(A), by permitting Momsen and the other class members only twelve-month leaves of absence and failing to provide them with reasonable accommodations for their disabilities. UPS moved to dismiss the complaint [15], principally arguing that none of the individuals seeking relief could come within the protection of the ADA because they had taken twelve-month-long leaves of absence prior to their "administrative separations" from UPS, and "the inability to work for a multi-month period removes a person from the class protected by the ADA." [16] at 7 (quoting *Byrne v. Avon Prods. Inc.*, 328 F.3d 379, 380-81 (7th Cir. 2003). In the alternative, UPS argued that EEOC "failed to plead even one fact in support of its attempt to seek relief on behalf of a class"; that "[n]owhere has the EEOC pled any fact to plausibly suggest there is someone out there who might be able to convince this Court to find him or her a qualified individual with a disability despite missing 12 months of work at the time of his or her administrative separation." [16] at 12. UPS also expressed concerns about the potential discovery costs it could face if the case were permitted to move forward. See *id.* at 12-14.

---

[1] As EEOC is not subject to the strictures of Fed. R. Civ. P. 23, see *Gen. Tel. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980); *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002), the other workers are not members of a "class" as the term is typically understood. As a matter of convenience, and in accordance with the parties' practice, the Court nonetheless uses the term to refer to the unnamed individuals on whose behalf EEOC asserts its claims.

The Court granted UPS's motion to dismiss after concluding that "the complaint does not allege sufficient facts demonstrating that Momsen (or the potential class members) were qualified individuals. And, as currently pled, the EEOC's complaint is so threadbare, conclusory, and formulaic that it does not even allow the Court to reasonably infer that Momsen or proposed class members have a plausible basis for claiming to be 'otherwise qualified to perform the essential functions of the job with or without reasonable accommodation.'" [42] at 7. The Court granted EEOC leave to file an amended complaint, however, and allowed Momsen's more detailed intervenor complaint [18] to move forward.

EEOC filed an amended complaint [44], asserting more robustly pleaded claims on behalf of Momsen, another former UPS employee by the name of Mavis Luvert, and the class of unidentified class members. In addition to its general factual allegations about UPS's leave policy, and specific factual allegations as to Momsen and Luvert, EEOC alleged the following as to the unidentified class members:

> Similar to Momsen and Luvert, each class member is a qualified individual with a disability who could perform the essential functions of his or her job with or without a reasonable accommodation. Because disabilities, and the reasonable accommodations appropriate for particular individuals with disabilities, may vary significantly, the reasonable accommodations which UPS should have made available to class members to permit them to perform the essential functions of their jobs (with or without a reasonable accommodation), would not have been the same. The reasonable accommodations would have varied from class member to class member on an individual basis, as determined through an interactive process between UPS and the individual class members. However, rather than engage in that interactive process and reasonably accommodate these class members, without undue hardship to itself, UPS terminated the class members' employment pursuant to its policy described in paragraph 8.

[44 ¶ 27]. Asserting that these allegations were insufficient to comport with the requirements of Fed. R. Civ. P. 8, as interpreted by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), UPS moved to dismiss EEOC's claims as to the

unidentified class members. See [48]. UPS argued that EEOC "is relying on the exact same formulaic conclusion previously rejected for the proposed class members," and contended that "this lawsuit is truly an individual specific action and that EEOC has only mere speculation as its basis for contending anyone in the proposed class was a qualified individual capable of returning to work and performing the essential functions of his or her job, in spite of being unable to work for 12 months at the time of administrative separation." [49] at 1 (emphasis omitted). It emphasized that "[n]owhere in the Complaint * * * are there any facts pled to support extending the claim beyond Momsen and Luvert. Nor are there any facts pled to support the conclusion that anyone in the proposed class is a qualified individual with a disability after missing twelve months of work." *Id.* at 3.

In its opposition to the motion [53], EEOC asserted that its amended complaint stated a claim that rose above the speculative level and gave UPS fair notice of the charges against it. EEOC argued that dismissing the complaint with prejudice would "obliterate the 'short and plain' statement requirement of Rule 8(a)," [53] at 6, and, moreover, would "dramatically alter EEOC's ability to bring lawsuits alleging discriminatory policies or procedures." [53] at 5. Yet EEOC also conceded that it "did not identify nor did it search for all potential victims of this discrimination," and therefore "did not yet know they identities of all of the disabled employees who were affected by" UPS's application of the leave policy. [53] at 2. It assured the Court, however, that "[d]uring the discovery process, EEOC will identify all of the victims of this practice and UPS will have an opportunity to challenge the merits of those claims." [53] at 1.

The Court again dismissed the complaint. See [57]. Noting that "[t]he first amended complaint does not allege any specific facts regarding what the unidentified class members' disabilities are, the conditions of their termination or leave, or what accommodations would have

4

been suitable for them to return to work," the Court "conclude[d] that the EEOC has not alleged adequate factual information in its complaint with respect to the unidentified class members as it has not pleaded with adequate specificity facts establishing the plausibility of a claim that each class member is a qualified individual under the ADA who could have performed his or her job with or without a reasonable accommodation." The Court reasoned that EEOC, with its statutory mandate to investigate claims before filing suit and broad powers to issue subpoenas, "can and should do better in presenting its class allegations so that they set forth in more detail the factual basis for their ADA claims." [57] at 9. "[I]rrespective of the applicability of Rule 23 class certification procedures, the EEOC must still include sufficient facts to put UPS on notice of the nature of the claim(s) and must state a plausible claim for relief." *Id.* The Court allowed EEOC "one final opportunity" to file a motion for leave to file a second amended complaint. *Id.* at 10.

EEOC took advantage of this opportunity and sought leave to file a second amended complaint. See [59]. The proposed second amended complaint did "not contain additional factual material with regard to any unidentified class member," [59 ¶ 5], but in EEOC's view "clarifie[d] that in addition to the two named victims EEOC is seeking relief for additional qualified individuals with disabilities who will be identified via discovery and who were victims of the same common violation: each unnamed qualified individual with a disability on whose behalf EEOC will seek relief was terminated by UPS pursuant to its inflexible application of the same blanket twelve-month leave policy." [59 ¶ 6]. EEOC underscored this position by adding an additional claim to the proposed second amended complaint: an allegation that the leave policy violated section 102(b)(6) of the ADA, 42 U.S.C. §§ 12112(b)(6), by operating as a "'qualification standard, employment test or other selection criteria' that screens out or tends to screen out a class of individuals with a disability and is not job-related or consistent with

5

business necessity." [59 ¶ 5]. In light of its identification of a specific policy and a circumscribed if not specific universe of potential class members (all those terminated by UPS after taking twelve months of medical leave during the relevant period), EEOC asserted, it stated "a plausible violation of both Sections 102(b)(5) and (b)(6) of the Americans with Disabilities Act, put[ ] UPS on notice of EEOC's claims and [gave] 'enough details about the subject matter of the case to present a story that holds together.'" [59 ¶ 8] (quoting *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010)). In its reply in support of this motion, EEOC also pointed out that "*no post-Twombly-Iqbal* cases require an ADA plaintiff alleging a common violation to state a *prima facie* case for each class member in order to survive a motion to dismiss," [63] at 9, and contended that "[t]he weight of judicial authority that recognizes the EEOC's unique enforcement role supports the conclusion that EEOC is not required to identify each victim of an employer's unlawful practice or application of a policy in order to challenge that practice or policy."

Relying on its earlier opinions, the Court denied EEOC's motion for leave to amend as futile. [71]. The Court highlighted EEOC's concession that the second amended complaint did not supplement the factual allegations of the earlier complaints and concluded that the dearth of factual allegations as to the unidentified class members doomed the new 42 U.S.C. § 12112(b)(6) claim as well.

## II. Analysis

### A. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). That is, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Twombly*, 550 U.S. at 557. A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). That is, the plaintiff must "'nudge[ ] [his] claims' of invidious discrimination across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). Yet the line between conceivability and plausibility is neither rigid nor fixed; "determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; see also *Swanson*, 614 F.3d at 404 (explaining that the Supreme Court has "called for more careful attention to be given to several key questions: what, exactly, does it take to give the opposing party 'fair notice'; how much detail realistically can be given, and should be given, about the nature and basis or grounds of the claim; and in what way is the pleader expected to signal the type of litigation that is being put before the court?"). In all contexts, however, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff

and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir.2005).

Upon revisiting EEOC's first amended complaint [44], and drawing all reasonable inferences in the EEOC's favor, the Court concludes that the first amended compliant satisfies these standards and should not have been dismissed. The first amended complaint alleges that UPS "maintained an inflexible 12-month leave policy which does not provide for reasonable accommodation of qualified individuals with disabilities and which instead provides for termination of their employment, in violation of * * * 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(5)(A)." It then offers detailed factual allegations as to how the policy affected two employees, Momsen and Luvert, and alleges that the same policy was applied across the board to other employees. These allegations are sufficient to satisfy the requirements of Fed. R. Civ. P. 8(a) and provide UPS with fair notice of the claims against it and the grounds upon which they rest. See *EEOC v. Sears, Roebuck & Co.*, No. 04 C 7282, 2005 WL 2664367 (N.D. Ill. July 22, 2005). UPS does not dispute that point. Indeed, UPS's substantive response to the amended complaint demonstrated its understanding of the allegations and appreciation for the potential nationwide scope of EEOC's allegations. See *EEOC v. Nw. Airlines, Inc.*, 216 F. Supp. 2d 935, 939 (D. Minn. 2002).

The tougher question is (and always has been) whether the factual allegations in the first amended complaint are sufficient to raise the possibility of relief above the "speculative level" for the unidentified class members. See [42] at 6. The Seventh Circuit has not provided explicit guidance on this issue, *but cf. EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996) ("During the liability phase of a lawsuit seeing injunctive relief, the EEOC need not necessarily make out a separate prima facie case of discrimination for each individual for whom it seeks

relief."), and the Court previously relied heavily upon *EEOC v. SuperValu, Inc.*, 674 F. Supp. 2d 1007, 1011 (N.D. Ill. 2009), in concluding that EEOC's allegations as to the unidentified class members were "precisely the type of conclusory, formulaic assertion that was disapproved by *Twombly*." Upon further examination, however, the Court has determined that *SuperValu* is not quite as analogous to the present case as the Court previously believed. In *SuperValu*, EEOC alleged that SuperValu failed to accommodate a single employee, whom EEOC alleged was "a qualified individual with a disability within the meaning of Section 101(8) of the ADA." EEOC did not identify the alleged disability, nor did it even allege that the claimant was qualified to perform the essential functions of her job with or without accommodation. In a case brought on behalf of a single individual who filed a charge of discrimination with EEOC, this level of specificity is insufficient to pass muster under *Iqbal* and *Twombly*. See *EEOC v. Elan Nutrition, Inc.*, No. 08-cv-253, 2008 WL 3539990, at *2 (W.D. Mich. Aug. 12, 2008) (dismissing single-claimant complaint where EEOC "fail[ed] to allege either [claimant's] claimed impairment or the reasonable accommodation [claimant] requested and was denied"); see also *Bates v. United Parcel Serv.*, 511 F.3d 974, 989 (9th Cir. 2007) ("Before an employee can challenge an employer's qualification standard, however, an employee must first prove that he is a 'qualified individual' within the meaning of the ADA.").

But this broader case is brought by EEOC, which frequently and in this instance "does not stand in the employee's shoes." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002). EEOC, charged with "advanc[ing] the public interest in preventing and remedying employment discrimination," *Gen. Tel. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980); see also *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002) ("The EEOC's primary role is that of a law enforcement agency."), is pursuing this action on behalf of a nationwide class of aggrieved

individuals. And although EEOC is subject to the federal pleading rules when acting in this capacity, see Fed. R. Civ. P. 1; *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001), the unique role of the EEOC is such that courts generally have allowed complaints with "class" allegations comparable to those asserted here to move forward, both pre- and post-*Twombly* and *Iqbal*. Quite recently, for instance, in an EEOC action challenging a company-wide alcohol testing policy under the ADA, a district court in the Western District of Pennsylvania held that EEOC was not required to name – or plead detailed facts specific to – the unidentified individuals in the purported class. See *EEOC v. U.S. Steel Corp.*, No. 10-cv-1284, 2012 WL 3017869, at *9-10 (W.D. Pa. July 23, 2012). Other courts have reached similar conclusions when evaluating the sufficiency of complaints brought by EEOC on behalf of large groups of aggrieved individuals. *E.g.*, *EEOC v. Bass Pro Shops*, --- F. Supp. 2d ---, No. 11-cv-3425, 2012 WL 1965685, at *17 (S.D. Tex., May 31, 2012) (explaining that "[w]hile the EEOC is not required to provide the identities of all § 706 class members, the Court cannot locate a case in which the EEOC brought a § 706 claim without identifying a single plaintiff" and collecting cases); *EEOC v. Sears, Roebuck & Co.*, No. 04 C 7282, 2005 WL 2664367, at *2 (N.D. Ill. July 22, 2005); *cf. EEOC v. Dial Corp.*, 156 F. Supp. 2d 926 (N.D. Ill. 2001) (rejecting arguments that EEOC's claim that a class of individuals was subject to sexual harassment should be dismissed because it did not identify all the alleged victims and was not proper for "class" treatment because of the individualized nature of the claims). Like the complaint deemed plausible in *EEOC v. 5042 Holdings Ltd.*, No. 3:09-cv-61, 2010 WL 148085, at *2 (N.D. W.Va. Jan. 11, 2010), EEOC's complaint in this case identifies the statutes that UPS allegedly violated; the time frame in which the alleged violations occurred; the names of two presently identified victims; a general description of the class of aggrieved persons; the specific claims alleged and

their elements as to the charging party and the class of aggrieved persons; the types of conduct to which the named claimants and the unidentified class were subjected; and the remedies being sought.

*Iqbal* and *Twombly* do not require plaintiffs, including EEOC, to plead detailed factual allegations supporting the individual claims of every potential member of a class. EEOC must merely "plead[ ] factual content that allows the court to draw the reasonable inference" that UPS violated provisions of the ADA as to the unidentified individuals. *Iqbal*, 556 U.S. at 678. It has done that. On the face of the facts pleaded in EEOC's amended complaint, the Court can reasonably infer that UPS discriminated against other "qualified individuals" when it enforced its leave policy. *Cf. Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012) (explaining that a "100% healed" policy per se violates the ADA when applied to disabled individuals). Whether others allegedly subjected to the policy were in fact "qualified individuals" who could have performed their job duties with or without reasonable accommodation is a question on the merits that can and will be addressed at a later stage of the case.

EEOC's ready admission that it made little if any effort to evaluate the extent to which other individuals may have potentially meritorious allegations of disability prior to filing suit continues to give the Court some pause. See [53] at 2. EEOC is required to investigate and conciliate claims before filing a lawsuit, see *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977), and at least one circuit court has upheld the dismissal of an EEOC suit where, among other things, EEOC "did not investigate the specific allegations of *any* of the 67 allegedly aggrieved persons [*i.e.*, the class members,] until *after* the Complaint was filed." *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 676 (8th Cir. 2012) (quotation omitted). Yet the Seventh Circuit has made clear that courts "have no business limiting [an EEOC] suit to claims that the

11

court finds to be supported by the evidence obtained in the Commission's investigation," *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005), and EEOC has alleged, in compliance with Fed. R. Civ. P. 9(c), that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." [44 ¶ 7]; see also [53] at 2 ("EEOC's administrative investigation of Charging Party Trudi Momsen's charge of discrimination found reasonable cause to believe that UPS's leave practice violated the ADA."). Thus, while the Court remains cognizant of UPS's concerns about "fishing expeditions" and unduly burdensome discovery costs, see *Swanson*, 614 F.3d. at 405 (7th Cir. 2010), the Court must defer to EEOC's investigatory judgment at this early stage of the case. See *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) (explaining that EEOC is "the master of its own case and [has] * * * the authority to evaluate the public interest at stake.").

With that said, in order to (1) minimize the likelihood that UPS's concerns about a fishing expedition come to fruition, (2) move the case forward through the discovery phase as quickly as possible, and (3) allow prompt exploration of any settlement opportunities that may arise, the Court will refer this matter to Magistrate Judge Schenkier for discovery supervision and, if requested, settlement conference. Judge Schenkier will be able to explore with the parties cost effective ways of specifically identifying any additional viable claimants, after which time UPS "will have an opportunity to challenge the merits of those claims." [53] at 1.

    **B.**    **Motion for Leave to File an Amended Complaint**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, "courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002). Delay alone is usually insufficient to deny a motion to amend.

*Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir.2004). But "the longer the delay, the greater the presumption against granting leave to amend." *King v. Cooke*, 26 F.3d 720, 723 (7th Cir.1994) (internal quotation omitted). An amended complaint is futile if it could not withstand a motion to dismiss. See *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 811 (7th Cir.2009).

The Court previously denied EEOC's request for leave to file an amended complaint on the basis of futility. Since the Court has reconsidered its decision as to the adequacy of EEOC's claims, it must also reconsider whether EEOC is entitled to amend its complaint to clarify its allegations and assert the additional Section 106 claim.

The Court concludes that EEOC should be granted leave to file its second amended complaint. Though it has been pending for quite some time, this case is still in its initial stages. No discovery has taken place, and there is no indication that UPS will be unduly prejudiced by the addition of a new, related claim at this time. Unlike the plaintiff in the case that UPS cites in support of its prejudice argument, *Crenshaw v. Antokol*, 206 F. App'x 560 (7th Cir. 2006), EEOC has not filed "unintelligible complaints" or asserted plainly outlandish claims. The motion for leave to file a second amended complaint [59] is granted. UPS is directed to answer or otherwise respond to the second amended complaint within 21 days of the date of this order.

**III.    Conclusion**

For the reasons stated above, the Court has reconsidered and withdraws its earlier rulings on the motion to dismiss [57] and motion for leave to file a second amended complaint [71]. The Court denies UPS's motion to dismiss [48] and grants EEOC's motion for leave to file a second amended complaint [59]. EEOC's motion for a certificate of appealability [72] and UPS's

motion for leave to file a surreply [78] are denied as moot. UPS is directed to answer or otherwise respond to the second amended complaint within 21 days of the date of this order.

Dated: January 11, 2013                                    _____

                                                             Robert M. Dow, Jr.
                                                             United States District Judge