**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, and TRUDI MOMSEN, Intervenor-plaintiff, | ) ) ) ) | No. 09 CV 5291 |
| v. | ) ) | Judge Robert Dow, Jr. |
| UNITED PARCEL SERVICE, INC., | ) ) | Magistrate Judge Schenkier |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF UPS'S MOTION TO DISMISS
§12112(b)(6) CLAIM IN SECOND AMENDED COMPLAINT**

The Court's July 3, 2012 Order denying EEOC leave to file its Second Amended Complaint did not reach the issue of whether UPS's 12-month policy can be challenged as a qualification standard under 42 U.S.C. §12112(b)(6) because the Court denied leave on a different legal basis. (Docket #71, FN 4). Now that the Court has reversed its prior decisions and granted leave to EEOC to file its Second Amended Complaint, the issue of whether EEOC can proceed under section 12112(b)(6) must be resolved.

In addition to alleging a failure to make reasonable accommodation under 42 U.S.C. §12112(b)(5), the Second Amended Complaint also challenges UPS' 12-month policy as an alleged qualification standard, employment test or other selection criteria that screens out disabled individuals in violation of section 12112(b)(6). The problem, however, is that the ability to regularly attend work and avoid missing multiple months is an essential job function and not a qualification standard. Qualification standards, employment tests and selection criteria are personal or professional attributes *that help predict or measure whether an applicant can perform an essential job function* (e.g. requiring a college degree, prior experience, specific skill sets, or passing a preliminary skills or math test). Conversely, the Seventh Circuit has made

clear *the ability to regularly attend work and not miss multiple months is an essential function* of all but the most unusual of jobs. As such, EEOC's section 12112(b)(6) claim fails to identify an actual qualification standard upon which to base its claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

      **A.    Essential Job Functions Should Not Be Confused with Qualification Standards, Employment Tests or Other Selection Criteria.**

An essential job function is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 CFR §1630.2(n). A qualification standard is defined as "the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." 29 CFR 1630.2(q). Looking at the relationship between the two terms, qualification standards are *the degrees, licenses, prior experience, skill sets, tests and other personal or professional requirements that an employer requires because it accurately predicts or measures an applicant's ability to perform the fundamental job duties of the position*. The legislative history bears out this distinction by stating that a qualification standard or selection criteria, "must concern an essential, non-marginal aspect of the job, and be carefully tailored to measure the person's actual ability to do this essential function of the job." *H.R. Rep. No. 101-485, pt. 2,* at 32 (1990); *see also Bates v. United Parcel Service*, 511 F.3d 974, 996 (9th Cir. 2007) ("[t]o show 'job-relatedness' [under 12112(b)(6)], an employer must demonstrate that the qualification standard fairly and accurately measures the individual's actual ability to perform the essential functions of the job.").[1]

---

[1] A survey of cases shows that qualification standards challenged under 42 U.S.C. § 12112(b)(6) are typically tests, examinations or objective requirements measuring physical acumen. *See e.g., Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 570 (1999) (distant visual acuity standard of the Federal Motor Carrier Safety Regulations imposed as

In *Bates*, the Ninth Circuit emphasized that courts should not confuse a qualification standard with an essential job function:

> 'Essential functions' are not to be confused with 'qualification standards,' which an employer may establish for a certain position. Whereas 'essential functions' are basic duties, 29 CFR 1630.2(n)(1), 'qualification standards' are personal and professional attributes that may include physical, medical and safety requirements. The difference is crucial.

*Bates*, 511 F.3d at 990. The *Bates* court emphasized this distinction in noting that an employee must first prove he can perform the essential functions of the job before it becomes necessary to even look at the validity of the qualification standard under section 12112(b)(6). *Id.*, at 992.

> **B.  Regular Attendance at Work Without Missing Multiple Months is a Well Established Essential Function of Every Job.**

While EEOC would like to pretend that the ability to avoid missing 12 months of work is a "qualification standard" (or, as it claims, a "retention standard"), this ruse is contrary to well established Seventh Circuit precedent that the ability to regularly attend work - and not miss multiple months of work - is an essential function of most jobs. The Seventh Circuit has repeatedly reinforced the common-sense notion that "if one is not able to be at work, one cannot be a qualified individual." *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). This is because regular attendance is an essential function of all but the most unusual of jobs. *See Murray v. AT&T Mobility LLC*, 374 Fed.Appx. 667, 672 (7th Cir. 2010) ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not

---

qualification standard for commercial truck drivers); *Lopez v. Pacific Maritime Ass'n.*, 657 F.3d 762, 763 (9th Cir. 2011) (challenging as a qualification standard employer's "'one-strike rule,' which eliminates from consideration any applicant who tests positive for drug or alcohol use during the pre-employment screening process."); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1261 (10th Cir. 2010) (finding employer's annual physical fitness exam, which required all boiler plant operators to show they are "capable of arduous physical exertion," was a lawful qualification standard); *Allmond v. Akal Sec.*, 558 F.3d 1312, 1315 (11th Cir. 2009) (employer's requirement that security officers pass hearing test without the help of a hearing aid was a valid qualification standard); *Fuzy v. S&B Engineers & Constructors, Ltd.*, 332 F.3d 301, 302 (5th Cir. 2003) (examining employer's qualification standard that pipefitters must be able to lift 100 pounds unassisted).

accommodate erratic or unreliable attendance."); *Hamm v. Exxon Mobil Corp.*, 223 Fed.Appx. 506, 508 (7th Cir. 2007) ("Attendance is an essential aspect of most jobs."); *Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir. 1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484-85 (7th Cir. 1999) ("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform *any* of his job functions, essential or otherwise."); *EEOC v. Yellow Freight System,* Inc., 253 F.3d 943, 948 (7th Cir. 2001) ("At the outset, let us be clear that our court, and every circuit that has addressed this issue, has held that . . . in most cases, attendance at the job site is a basic requirement of most jobs.").

Correspondingly, the Seventh Circuit has uniformly held that employees on multi-month leaves of absences are not qualified individuals with a disability due to their inability to perform ***the essential job function of regularly attending work***. In *Byrne v. Avon Products*, the Seventh Circuit held that an employee who had missed two months of work was not a qualified individual with a disability because the "***[i]nability to work for a multi-month period removes a person from the class protected by the ADA***." *Byrne*, 328 F.3d at 380-81 (emphasis supplied); *see also Hamm*, 223 Fed. Appx. at 508 (affirming that a multi-month leave of absence removes an individual from the protections of the ADA). The Seventh Circuit has reached this same conclusion in all cases addressing this issue, whether the absence was two months, a year or longer. *See Hamm*, 223 Fed. Appx. at 508 (employee was not a qualified individual with a disability after working only five days over prior 33 months); *Perkins v. Ameritech Corp.*, 161 Fed. Appx. 578, 581 (7th Cir. 2005) (not a qualified individual with disability because of multi-month medical leave of absence); *Oestringer v. Dillard Store Services, Inc.*, 92 Fed. Appx. 339,

341-42 (7th Cir. 2004) (employee was not a qualified individual at time of termination because she had missed six weeks of work on a medical leave that had no definite end-point); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) (in case where employee had 18 months in medical leaves over prior three years, court held he was not a qualified individual with a disability because, "[w]hen an employee is unable to perform the essential function of attending his employment, few, if any, reasonable accommodations exist."); *Nowak*, 142 F.3d at 1003-04 (teacher with 18 month medical leave of absence was not a qualified individual); *Waggoner,* 169 F.3d at 485 (employee missing 5-½ months of work and showing up late or not at all for 40 days in a 14-month period was not a qualified individual); *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924, 928 (7th Cir. 1998).

There can be no dispute that the ability to avoid missing 12 months of work is an essential job function, not a qualification standard. Consequently, EEOC's section 12112(b)(6) claim is defective on the face of the complaint because it fails to identify any qualification standard, employment test or other selection criteria upon which to base the claim. As such, EEOC's attempt to challenge UPS's 12 month policy as a qualification standard is defective on the face of the complaint and should be dismissed.

## CONCLUSION

For the reasons set forth herein, EEOC's section 12112(b)(6) claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

        Respectfully submitted,

        UNITED PARCEL SERVICE, INC.


       By: /s/ Gary R. Clark
         One of Its Attorneys


John A. Klages, ARDC #06196781
Gary R. Clark, ARDC #06271092
Ellen M. Girard, ARDC #06276507
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-5000
(312) 715-5155 (fax)
john.klages@quarles.com
gary.clark@quarles.com
ellen.girard@quarles.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Memorandum in Support of UPS's Motion to Dismiss §12112(b)(6) Claim in Second Amended Complaint** was filed electronically using the Court's CM/ECF system on February 1, 2013. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system at the e-mail addresses indicated below. Parties may access this filing through the Court's system:

John C. Hendrickson
Diane I. Samson
Jeanne B. Szromba
Equal Employment Opportunity Commission
500 W. Madison St., Suite 2000
Chicago, IL  60661
John.hendrickson@eeoc.gov
Diane.smason@eeoc.gov
Jeanne.szromba@eeoc.gov

David Hemenway
Law Office of David Hemenway, P.C.
300 S. Wacker Drive, Ste. 1700B
Chicago, Illinois 60606
employmentlaw@mac.com

    /s/Gary R. Clark
    Gary R. Clark

QB\19397544.1