UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 5291 |
| v. | ) ) | Judge Sara L. Ellis |
| UNITED PARCEL SERVICE, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a second amended complaint against United Parcel Service, Inc. ("UPS") on behalf of former UPS employee Trudi Momsen and other unidentified class members alleging that UPS violated sections 102(b)(3)(A), (b)(5)(A), and (b)(6) of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112(b)(3)(A), (b)(5)(A), (b)(6). Before the Court is UPS's motion to dismiss the § 12112(b)(6) claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, UPS's motion [97] is denied.

## BACKGROUND[1]

Since 2002, UPS has maintained a leave policy providing that employees will be "administratively separated from employment" after twelve months of leave. Second Am. Compl. ¶ 9. This policy is applied to qualified individuals with disabilities who can perform the essential functions of their jobs with or without a reasonable accommodation. For example,

---

[1] The Court presumes familiarity with its prior opinions and orders in this case and refers the reader to its January 11, 2013 Memorandum Opinion and Order, Doc. 83, for a more detailed description of the procedural history of this case. It sets forth here only those facts necessary to resolution of the pending motion to dismiss. These facts are taken from the second amended complaint and are presumed true for the purpose of resolving UPS's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Momsen, who worked at UPS since 1990, was terminated in March 2007 soon after returning from a twelve-month medical leave of absence. When she returned to work in February 2007, she required a cane to walk and requested reasonable accommodations including a hand cart, but UPS refused to provide her with any accommodations. Soon after returning to work, Momsen injured herself and needed to take additional time off to receive therapeutic treatment. Instead of granting Momsen's request for additional medical leave, however, UPS fired her pursuant to its twelve-month leave policy. Another employee, Mavis Luvert, was also fired pursuant to the policy after being placed on a disability leave of absence for twelve months.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The ADA prohibits an employer from

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

42 U.S.C. § 12112(b)(6). In its second amended complaint, the EEOC alleges that UPS's leave policy, which acts as a 100% healed requirement, operates as a qualification standard in violation of § 12112(b)(6). *See* Doc. 63 at 2 ("Because UPS's application of its leave policy acts as a health requirement (effectively, a 100% healed requirement for employees who have been on leave) that limits the ability of qualified individuals with a disability to return to work, it acts as just such a 'qualification standard' prohibited by § 12112(b)(6)."); *id.* at 4 ("[I]n order for UPS employees to return to work from their medical leave, they had to meet a standard of fitness which required them to work without an additional accommodation, in violation of the ADA."). The Seventh Circuit has held that, when applied to a qualified individual with a disability, a 100% healed policy is *per se* impermissible because it "prevents individualized assessment" and thus "necessarily operates to exclude disabled people that are qualified to work." *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012). UPS argues, however, that this is irrelevant because "the ability to regularly attend work and not miss multiple months is an essential job function and not a qualification standard, employment test or other selection criteria." Doc. 97 at 1. Without an actionable qualification standard, UPS contends, the EEOC's § 12112(b)(6) claim fails.

EEOC regulations define "qualification standards" as "the personal and professional attributes including the skill, experience, education, physical, medical, safety and other

3

requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired." 29 C.F.R. § 1630.2(q). An "essential function" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." *Id.* § 1630.2(n)(1). Although, as UPS points out, the Seventh Circuit has found regular job attendance to be an essential job requirement, *see EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001), the EEOC's § 12112(b)(6) claim is not premised on attendance but rather on UPS's imposition of a 100% healed requirement on those seeking to return to work. Framed as such, the twelve-month policy can be considered a qualification standard—a medical requirement that an individual must meet in order to maintain his or her position with UPS—and not an essential job function. *See Street v. Ingalls Mem'l Hosp.*, No. 06 C 2963, 2008 WL 162761, at *7–8 (N.D. Ill. Jan. 17, 2008) (discussing 100% healed policy in connection with the ADA's prohibition against the use of qualification standards to screen out individuals with disabilities); *Moore v. Jackson County Bd. of Educ.*, --- F. Supp. 2d ----, 2013 WL 5797844, at *11 (N.D. Ala. Oct. 28, 2013) (discussing whether a 100% healed policy would violate § 12112(b)(6)). Because such a requirement falls within the definition of a "qualification standard," and the EEOC has alleged that the policy applies to qualified individuals with disabilities,[2] the EEOC may proceed on its § 12112(b)(6) claim.

---

[2] The Court has previously found that the EEOC has sufficiently pleaded that UPS discriminated against qualified individuals in enforcing its leave policy and that whether those allegedly subjected to the leave policy are in fact "qualified individuals" is a question on the merits to be resolved at a later stage of the case. Doc. 83 at 11.

**CONCLUSION**

For the foregoing reasons, UPS's motion to dismiss [97] is denied. UPS is ordered to answer the second amended complaint by February 28, 2014.

Dated: February 11, 2014

SARA L. ELLIS
United States District Judge