# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EEOC, ET AL., ) DOCKET NO. 03 C 6576
)
Plaintiffs,)
)
vs. )
)
PEPSI AMERICAS, INC., ) Chicago, Illinois
) September 17, 2004
Defendant.) 9:00 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
MILTON I. SHADUR, Judge

APPEARANCES:

For the Plaintiffs:
MS. JUNE WALLACE CALHOUN

For the Defendant:
MS. REGINA W. CALABRO

For the Intervenor:
MS. ALENNA K. BOLIN

JESSE ANDREWS
Official Court Reporter - U. S. District Court
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 435-6899

* * * * * *



THE CLERK: 03 C 6576, Equal Opportunity vs. Pepsi Americas.

MS. BOLIN: Good morning, your Honor. Alenna Bolin on behalf of plaintiff intervenor Renaee Henry.

MS. CALHOUN: Good morning, your Honor. June Wallace Calhoun on behalf of the EEOC.

MS. CALABRO: Good morning, your Honor. Regina Calabro on behalf of the defendants.

THE COURT: What's the predicate for seeking this information?

MS. CALABRO: Your Honor, we have three reasons for seeking the current employments records for Mr. Henry. Probably the primary reason would be the medical records that have been turned over indicate that she is continuing to complain about anxiety and stress at her new job, and that is a strong element in damage. We are seeking her employment records to see what's causing her anxiety and stress at her employment.

During her deposition she testified that she was enjoying her new job, yet her medical records reflect she has complained about that job, but the medical records don't provide any details.

THE COURT: Did you ever complain about yours?

MS. CALABRO: Do I ever complain about mine?

THE COURT: Yes. I mean I am not quite sure that

that --

MS. CALABRO: But I don't have a complaint on file seeking damages for anxiety and stress.

THE COURT: Well, let me ask plaintiffs' counsel. What about it?

MS. BOLIN: Your Honor, I have looked through the medical records, and I have not seen anything in those records that relate to stress on her job. There were two medical records relating to stress that occurred during the time that she was employed at her current job. She saw her doctor a couple of days after her boyfriend died, and it did note that there he was stress relating to that incident, it was not related to work.

There was also another incident where it referred to stress. This was about one to three days after she learned that her deposition in this case would be scheduled. She testified at her deposition that in preparing for depositions, answering interrogatories was very stressful.

THE COURT: All right. That's one strike. What's your other reason or reasons?

MS. CALABRO: My response to that, your Honor, is that there is a medical document.

THE COURT: You are not going to get it. You know, look. There is too much is potential prejudice to somebody's current employment. By taking this job she is essentially

mitigated her damages so it cuts off any potential money exposure for Pepsi. The idea that -- for example, something could be done that would enlarge Pepsi's exposure because maybe her employer -- current employer would take a dim view of learning about this action or being deposed or anything else, doesn't seem me to serve anybody's interest.

So what's the other reason or reasons?

MS. CALABRO: Well, your Honor, the other reasons were -- one is credibility. We would like to verify on her application what recent employers she has listed and she might have included --

THE COURT: You are not going to do get that one either.

What's the third reason?

MS. CALABRO: May I just finish that point, your Honor?

THE COURT: Yes. You've finished, really.

MS. CALABRO: We have asked for it --

THE COURT: You know, I really take a very dim view of this. This has all of the earmarks of basically harassment. This is the kind of thing for which discovery is not geared. And especially in a situation in which there has been a cut off by reason of the acceptance of a new job that really says from this point forward there is no problem with frontpay, so don't look a gift horse in the mouth.

What else if anything do you have?

MS. CALABRO: Well, credibility is going to be an important issue in this case. And we have asked for past tax returns and W-2s from Ms. Henry. And we know that there is certain -- she's claimed she had certain employment since Pepsi but did not turn in W-2s for those records of employment. So one aspect of this request is to review her employment application and see what employers she is claiming on that application since the time she worked at Pepsi.

THE COURT: If she claims to have other employments and I don't know whether her tax return would yet -- the current tax return -- would yet show that, I don't know when that took place. It may be during this year, in which case the return would not yet have been filed. But if you have some disparity in that, there will be time enough to consider possibility again if you have to query her credibility on that score.

MS. CALABRO: We have asked for the tax records, your Honor, repeatedly, and plaintiff's counsel has told us for a few weeks now that she was going to provide those, and we still haven't received them.

THE COURT: That's a different issue.

MS. BOLIN: It's a different issue. We have turned over the W-2s and identified her previous employers. And there was one employer that she's taking the deposition of September

27th and will have an opportunity to inquire.

THE COURT: They haven't disputed, as I see their motion, the other temporary or interim employments. So you are going to be able to get that discovery.

Any other similarly meritorious grounds?

MS. CALABRO: You Honor, we believe that there is some mitigation, even though she's not asking for backpay or frontpay from the date of her employment with this current employer. When he applied, the position she applied for and her availability that she indicates on her application, would go to her mitigation efforts. Ms. Henry claims that she was unable to find employment for a significant period of time.

THE COURT: How is that going to be improved on by the records of when she did get employment?

MS. CALABRO: The employment records would indicate when he told the Chicago Tribune, when he applied to the Chicago Tribune, when she indicated what position she was willing to accept and her availability for employment.

THE COURT: At this point you are going to have to use other means to the extent that any of that information is relevant. I am going to grant the motion for the protective order. You are not to pursue her in connection with the present employment certainly at this point. Whether further circumstances may change that is something that we look at in the further, but not for now. So I am granting the motion.

MS. BOLIN: Thank you, your Honor.

THE COURT: Thank you.

(WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)

C E R T I F I C A T E

I HEREBY CERTIFY that the foregoing is a true and correct transcript from the report of proceedings in the above-entitled cause.

JESSE ANDREWS, CSR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
DATED: September 28, 2004